## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 18-cv-00271 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| STEVEN MANDELL | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Steven Mandell is serving a life sentence following his conviction on charges stemming from his participation in a conspiracy to kidnap, extort, torture, and murder a wealthy businessman. Now before the Court is Mandell's petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Dkt. No. 1.) For the reasons that follow, Mandell's petition is denied.

## BACKGROUND

The following facts are taken from the district court's opinion denying Mandell's motion for judgment of acquittal, or, in the alternative, a new trial, *United States v. Mandell* ("*Mandell I*"), No. 12 CR 842, 2014 WL 5560807 (N.D. Ill. Nov. 3, 2014), and the Seventh Circuit's opinion affirming the district court's denial of Mandell's motions for a new trial, *United States v. Mandell* ("*Mandell II*"), 833 F.3d 816 (7th Cir. 2016).[1]

In the summer of 2012, Mandell became acquainted with George Michael, a real estate businessman. Unbeknownst to Mandell, Michael was a Federal Bureau of Investigation ("FBI") informant who recorded several of his conversations with Mandell. Many of those recorded conversations pertained to Mandell's plan to kidnap, torture, extort, and kill a wealthy businessman named Steven Campbell. Specifically, Mandell and his accomplice, George Engel,

---

[1] Mandell previously moved for authorization to conduct discovery (Dkt. Nos. 19, 21), but this Court found that Mandell failed to demonstrate good cause for discovery and denied his motion. (Dkt. No. 51.)

planned to pose as police officers and "arrest" Campbell. Then, they would take Campbell to an empty building Mandell dubbed "Club Med," where Campbell would be tortured until he agreed to turn over cash and property. Once a sufficient amount of money had been extracted from him, Campbell would be killed and dismembered.

Video and audio evidence obtained by the Government by means of a court-authorized wiretap of Club Med corroborated Michael's recordings. That evidence revealed Mandell and Engel discussing the details of their plan over a three-day period. The audio recordings captured discussions between Mandell and Engel as they laid out the graphic details of their plot, while the video recordings showed both men bringing into Club Med the tools they would use to torture and dismember Campbell.

Mandell was arrested on his way to kidnap Campbell on October 25, 2012. At the time of his arrest, Mandell was dressed as a law enforcement officer, complete with a fake photographic identification card and a false arrest warrant for Campbell. In addition, law enforcement recovered a loaded gun, among other things, at Club Med.

On March 21, 2013, a grand jury returned an eight-count Superseding Indictment charging Mandell with conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201 (Count One); conspiracy and attempted extortion, in violation of 18 U.S.C. § 1951 (Counts Two and Three); possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Four); being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count Five); obstruction of justice, in violation of 18 U.S.C. § 1512 (Count Six); and murder-for-hire, in violation of 18 U.S.C. § 1958(a) (Counts Seven and Eight). The latter two Counts concerned a separate plot in which Mandell allegedly agreed to kill another individual at Michael's request.

Before trial, Mandell moved to suppress the wiretap evidence. During its investigation, the Government submitted two applications for authorization to intercept oral communications and visual, non-verbal conduct at Club Med. The Government included the affidavit of FBI Special Agent Richard Tipton in support of its applications. In his motion to suppress, Mandell argued that the Government failed to establish its need for the wiretaps and further that Agent Tipton knowingly omitted pertinent facts from the affidavits in support of the applications. The district court denied Mandell's motion, finding that the Government needed the wiretaps to identify Mandell's accomplice, later found to be Engel. Moreover, the district court found that the evidence did not support Mandell's contention that the Government already knew Engel's identity at the time Agent Tipton submitted his affidavits in support of the wiretaps. For that reason, the district court determined that there was no need to hold an evidentiary hearing regarding the validity of the wiretap authorization pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).[2]

At trial, Mandell admitted to devising and discussing the plot to kidnap, torture, and kill Campbell. He denied any intention of ever carrying out the crime, however. Rather, Mandell claimed that Michael was paying him about $1,000 a week and he was just playing along to feed Michael's fantasies and continue receiving the weekly payment. Ultimately, a jury convicted Mandell on the first six Counts (which related to the Campbell plot) and acquitted him on Counts Seven and Eight (which involved a different individual).

In a post-trial motion, Mandell argued that the district court erred in denying his motion to suppress the wiretap evidence and asserted that there were numerous errors at trial that required

---

[2] Under *Franks*, "a wiretap order is invalid—even if the application and authorization meet all the statutory requirements—if the order was obtained by the government's deliberate or reckless omission of material information from its application." *Mandell II*, 833 F.3d at 823. Further, a defendant may be entitled to an evidentiary hearing to prove his case but "only if he first makes a substantial preliminary showing." *Id.* (internal quotation marks omitted).

either a new trial or a judgment of acquittal. The district court denied that motion as well. Mandell then filed a second post-trial motion *pro se*, in which he argued that he was entitled to a new trial based on newly discovered evidence. Specifically, Mandell cited evidence showing that the gun recovered at Club Med was bought by an individual with ties to the owner of a strip club in which Michael also had an ownership interest. Thus, Mandell contended that the evidence supported his theory that Michael acquired the firearm and planted it in Club Med. However, the district court disagreed that the new evidence provided any link between Michael and the firearm or could otherwise be used to impeach Michael's trial testimony, and therefore denied the second post-trial motion as well.

The district court sentenced Mandell to life in prison. On appeal, Mandell again argued that the wiretap evidence should have been suppressed and also claimed that he was entitled to a new trial based on his theory that Michael planted the firearm found at Club Med. The Seventh Circuit affirmed the district court's denial of Mandell's motion to suppress, concluding that the Government's wiretap applications satisfied the necessity requirement of 18 U.S.C. § 2518(1)(c) necessity requirement. *Mandell II*, 833 F.3d at 821–23. The Seventh Circuit further agreed that the district court properly declined to hold a *Franks* hearing because Mandell failed to make a substantial preliminary showing that the Government's applications would have been denied. *Id.* at 823. The Seventh Circuit also affirmed the district court's denial of a new trial based on new evidence supposedly supporting Mandell's planted gun theory. It observed that Mandell's theory was "strange" and further explained that "[n]o matter who owned the gun, or who was responsible for originally bringing it to Club Med, the evidence that Mandell **possessed** it . . . was clear." *Id.* at 824. Thus, there was "no reasonable probability that, had the [new evidence] been disclosed to the

4

defense, the result of the proceeding would have been different." *Id.* (internal quotation marks omitted).

## DISCUSSION

Mandell now seeks federal habeas relief under 28 U.S.C. § 2255. That statute allows a prisoner convicted of a federal crime to move to vacate his sentence if the sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[R]elief is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (internal quotation marks omitted). A § 2255 proceeding "is neither a recapitulation of nor a substitute for a direct appeal. Issues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances." *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007) (internal quotation marks and citation omitted). "When considering a § 2255 motion, the district court reviews the record and draws all reasonable inferences in favor of the government." *United States v. Saleh*, No. 15 C 11552, 2016 WL 2766305, at *2 (N.D. Ill. May 13, 2016).

Here, Mandell primarily claims that he received ineffective assistance of counsel at all levels and cites a litany of errors that supposedly rendered his counsels' performance constitutionally deficient. In addition, he asserts that he did not receive a fair trial in a fair tribunal as required by the Fifth Amendment's due process clause. Finally, Mandell argues that the

cumulative effect of the various errors he alleges in his habeas petition require that his sentence be vacated.[3]

## I.     Ineffective Assistance of Trial Counsel

The Court first addresses Mandell's contention that he received ineffective assistance from his trial counsel. The Sixth Amendment guarantees a criminal defendant the right "to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Moreover, the Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To demonstrate ineffective assistance of counsel, a habeas petitioner must satisfy *Strickland*'s two-prong test. *Campbell v. Reardon*, 780 F.3d 752, 762 (7th Cir. 2012). "First, he must show that counsel provided constitutionally deficient performance and second, he must show that this deficient performance prejudiced his defense. Failing to prove either element defeats a petitioner's claim." *Dunn v. Jess*, 981 F.3d 582, 591 (7th Cir. 2020) (internal quotation marks and citation omitted). To show that counsel was deficient, a petitioner "must identify acts or omissions by counsel that fell below an objective standard of reasonableness and could not have been the result of professional judgment." *Campbell*, 780 F.3d at 762. However, "[d]efense counsel is strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment." *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir. 2004) (internal quotation marks omitted). "Courts presume that counsel made reasonable strategic choices unless the defendant presents evidence rebutting that presumption." *Id.* (internal quotation marks omitted).

---

[3] Mandell initially filed his § 2255 petition *pro se* but he also moved for attorney representation, a request that was granted. After this Court denied Mandell the opportunity to conduct discovery, he opted to proceed with his original *pro se* petition rather than file an amended petition with the assistance of counsel. Moreover, while Mandell submitted a reply brief through counsel, he also submitted his own *pro se* reply as well as two other filings. In evaluating Mandell's § 2255 petition, the Court has considered the arguments raised in both the reply submitted by counsel and Mandell's *pro se* submissions.

A court need not even consider whether a counsel's performance was deficient if any alleged deficiency nonetheless did not prejudice the defendant. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). To satisfy the prejudice prong, a petitioner "must demonstrate a reasonable probability that, but for counsel's unprofessional errors," the outcome would have been different. *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks omitted). But he must do more than "show that the errors had some conceivable effect on the outcome" and instead demonstrate that his counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

### A. Failure to Seek Recusal of Presiding Judge

According to Mandell, his counsel should have sought recusal of the then-presiding judge[4] or otherwise sought to transfer the matter. First, he claims that the presiding judge's past work as an Assistant United States Attorney caused her to be biased in favor of the prosecution. However, counsel properly recognized that the presiding judge's former career, by itself, was not a basis for recusal. Indeed, the Seventh Circuit has recognized that judges who were formerly Assistant United States Attorneys need only recuse where the judge had "some level of actual participation in a case." *United States v. Dorsey*, 829 F.3d 831, 836 (7th Cir. 2016) (internal quotation marks omitted).

Alternatively, Mandell argues that his criminal case should have been reassigned to one of the judges who had presided over earlier civil cases that Mandell and Engel had brought against the United States. That result would have been contrary to the local rules in this District, pursuant

---

[4] In the ordinary course, this §2255 petition would be decided by the district court judge who presided over the underlying criminal proceeding. This matter, however, was reassigned to a different judge after the judge who presided over the criminal trial was appointed the Seventh Circuit.

to which cases are assigned at random (subject to certain exceptions not relevant here). *See* N.D.
Ill. Local Crim. Rule 50.2. Moreover, a criminal case can be reassigned as related to another case
only if the other case is also a criminal matter. *See* N.D. Ill. Local Crim. Rule 50.1. Thus,
Mandell's counsel did not err in declining to seek reassignment because such a request would
have been denied; Mandell had no entitlement to have his criminal case heard by one of the
judges who presided over earlier, related civil cases.

### B.     Failure to Investigate

Mandell also identifies numerous aspects of his case that he believes his counsel failed to
investigate adequately. A defendant's "counsel has a duty to make reasonable investigations or to
make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466
U.S. at 691. "When an ineffective assistance claim involves an allegedly inadequate investigation,
'a court must consider not only the quantum of evidence already known to counsel, but also
whether the known evidence would lead a reasonable attorney to investigate further.'" *Anderson
v. United States*, 981 F.3d 565, 575 (7th Cir. 2020) (quoting *Wiggins v. Smith*, 539 U.S. 510, 527
(2003)). A petitioner claiming that his counsel failed to conduct an adequate investigation "has the
burden of providing the court sufficiently precise information, that is, a comprehensive showing
as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943,
951 (7th Cir. 2003) (internal quotation marks omitted).

#### i.     Investigation of Informant's Credibility

One of the trial's key witnesses was Michael, the FBI informant. Despite his counsel's
"extensive cross examination of George Michael," *Mandell I*, 2014 WL 5560807, at *14, Mandell
now claims that if his counsel had conducted a more extensive investigation, he would have
uncovered more evidence with which to impeach Michael. Specifically, Mandell argues that an

adequate investigation would have enabled his counsel to identify inconsistencies in Michael's testimony regarding the timeline of certain events and discredit Michael by questioning him about his substance abuse.

As an initial matter, Mandell's contention that his counsel insufficiently investigated Michael is belied by the trial record. A reasonable investigation does not require an investigation of "every possible factual scenario." *Long v. United States*, 847 F.3d 916, 922 (7th Cir. 2017). And here, the district court observed that Mandell "extensively cross examined Michael regarding many substantive areas," which provided him "a full opportunity to probe and expose any infirmities in [Michael's] testimony and to challenge his credibility." *Id.* That suggests that counsel's investigation was thorough and that he made a reasonable strategic choice as to the facts he chose to investigate and raise on cross examination. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."). While, with hindsight, Mandell may believe that his counsel should have pursued other lines of inquiry, counsel was entitled to make "reasonable decisions whether certain investigations are necessary" since "resources are limited, and trial counsel must eventually shift from pretrial investigation to trial preparation." *Hawkins v. United States*, No. 16 C 6877, 2017 WL 1862643, at *3 (N.D. Ill. May 9, 2017) (quoting *Campbell*, 780 F.3d at 765).

Moreover, the Court cannot conclude that Mandell was prejudiced by any supposed deficiencies in his counsel's investigation. During cross examination, Mandell's counsel asked Michael about topics including previous negative credibility findings against him in administrative hearings and his history of fraudulent transactions. Thus, "the jury had more than ample opportunity to observe Michael's credibility," and nonetheless convicted Mandell on all

Counts related to the Campbell kidnapping conspiracy. It is implausible that additional information concerning Michael's history of drug use or minor errors in his recollection of the sequence of events would change that result. Indeed, both the Seventh Circuit and the district court observed that the evidence overwhelmingly supported Mandel's convictions. *Mandell II*, 833 F.3d at 820 ("[T]he evidence gathered was devastating . . . . As Mandell's opening brief on appeal admits, the videos show Mandell and Engel discussing in graphic detail the alleged kidnapping, extortion, and murder of Campbell." (internal quotation marks omitted)); *Mandell I*, 2014 WL 5560807, at *11 ("The government presented overwhelming evidence to convict [Mandell] of Counts One through Six of the Superseding Indictment."). Mandell fails to convince this Court that any further investigation by his counsel could have overcome the Government's substantial evidence of his guilt.

ii.     *Michael's Requests to Install Surveillance Equipment*

Mandell also contends that his counsel failed to investigate that Michael had previously purchased video surveillance equipment from Mandell and Engel, and the two had installed the cameras for Michael. Yet Mandell does not explain what such an investigation would have yielded and how it would have bolstered his defense. The Court therefore summarily rejects this basis for habeas relief.

iii.     *False Statements in Wiretap Applications and Planted Gun Theory*

Mandell faults his counsel for failing to investigate fully Agent Tipton's affidavits submitted in support of the Government's wiretap applications and to find evidence supporting his theory that Michael planted the firearm recovered at Club Med. Both of these issues, however, were raised on direct appeal and the Seventh Circuit concluded that Mandell failed to establish that Agent Tipton's affidavits contained material omissions and dismissed Mandell's "strange"

10

and "irrelevant" planted gun theory. *Mandell II*, 833 F.3d at 821–22, 824. Mandell cannot repackage these previously rejected arguments as claims of ineffective assistance of counsel and assert them in a § 2255 proceeding. *See Varela*, 481 F.3d at 935. In any case, Mandell simply speculates that an adequate investigation of both issues would yield favorable evidence for his defense but again fails to make the requisite comprehensive showing of what an investigation would have produced.

iv.     *Failure to Interview and Subpoena Witnesses*

In his petition, Mandell sets out a list of about a dozen witnesses he believes that his trial counsel should have interviewed and subpoenaed to testify at trial. Generally, Mandell believes that each of the various witnesses would have provided testimony that could have been used to discredit Michael or support his planted gun theory. But this Court has already explained that Mandell's counsel was not required to investigate every factual scenario that tended to discredit Michael and the Seventh Circuit has made clear that any additional investigation of the planted gun theory would be fruitless. Further, "[i]n the case of an uncalled witness, [the Seventh Circuit has] held that at the very least the petitioner must submit an affidavit from the uncalled witness stating the testimony he or she would have given had they been called at trial." *Wright v. Gramley*, 125 F.3d 1038, 1044 (7th Cir. 1997). Yet here, Mandell only provides a short paragraph speculating as to the substance of each uncalled witness's testimony. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."). And, given the overwhelming evidence of Mandell's guilt, the Court cannot find that Mandell was prejudiced by his counsel's failure to interview or subpoena any of Mandell's listed witnesses.

v.      *Failure to Obtain Discovery*

Mandell claims that his counsel was deficient in failing to seek discovery relating to multiple categories of information. Notably, Mandell provides this Court with no information demonstrating that any particular category of discovery actually exists. Nor does he offer anything more than conclusions to demonstrate how such discovery would support his defense. "An ineffective assistance of counsel claim cannot rest upon counsel's alleged failure to engage in a scavenger hunt for potentially exculpatory information with no detailed instruction on what this information may be or where it might be found." *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002). Thus, this ground for relief fails as well.

### C.      Pretrial Motions

Next, Mandell claims that his counsel failed to litigate competently his motion to suppress the wiretap evidence. In addition, Mandell claims that his counsel should have filed a motion to dismiss the gun charges, a motion to dismiss all charges on the grounds of vindictive prosecution, and a motion to preclude certain expert testimony.

i.      *Litigation of Motion to Suppress*

Although the Seventh Circuit affirmed the district court's denial of the motion to suppress the wiretap evidence, Mandell claims that he would have secured a favorable outcome if his counsel had presented better arguments for suppression. Specifically, he asserts that his counsel should have argued that the FBI had engaged in misconduct during its previous investigations of Mandell in the 1980s and early 1990s. But the Government's affidavits in support of the wiretaps did, in fact, reveal Mandell's criminal history and his successful lawsuit against the Government based on the FBI's misconduct. Since the wiretaps were approved even in spite of the Government's disclosure of information concerning Mandell's prior fraught history with the FBI,

it is implausible that the district court would have found that decades-old misconduct by agents

not involved in the present prosecution demonstrated an absence of probable cause for the

wiretaps.

Mandell also claims that his counsel was deficient in failing to challenge the reliability of

Michael, who provided information that was used in the affidavits. The Court finds that Mandell

suffered no prejudice from his counsel's failure to make such an argument for suppression. Much

of the information in the affidavits that was traceable to Michael came in the form of

transcriptions of recorded conversations between Michael and Mandell. Those recorded

conversations demonstrated that Mandell was planning on kidnapping Campbell, and so any

argument that the wiretap should be suppressed because of Michael's questionable reliability

would have failed. "Failure to raise a losing argument . . . does not constitute ineffective

assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

> ii.      *Failure to Seek Dismissal of Gun Charges*

Two of Mandell's offenses of conviction were for possession of a firearm in furtherance of

a crime of violence, in violation of 18 U.S.C. § 924(c), and for being a felon in possession of a

firearm, in violation of 18 U.S.C. § 922(g). Mandell asserts that his counsel should have moved to

dismiss both charges because his civil rights had been restored.

Under § 922(g), it is unlawful for any person "who has been convicted in any court of, a

crime punishable by imprisonment for a term exceeding one year" to possess a firearm. 18 U.S.C.

§ 922(g). However, "[a]ny conviction which has been expunged, or set aside or for which a

person has been pardoned or has had civil rights restored" is not considered a "crime punishable

by imprisonment for a term exceeding one year" for purposes of § 922(g) "unless such pardon,

expungement, or restoration of civil rights expressly provides that the person may

not . . . possess . . . firearms." 18 U.S.C. § 921(a)(20). It is the defendant's burden to prove by a preponderance of the evidence that his civil rights were restored. *United States v. Vitrano*, 405 F.3d 506, 510 (7th Cir. 2005). Here, Mandell's say-so is all the proof he offers of the restoration of his civil rights. But "a defendant cannot meet his burden by relying on a vague recollection that he received a letter restoring his civil rights." *United States v. Shields*, 789 F.3d 733, 750 (7th Cir. 2015). Moreover, Mandell never claims that he told his trial counsel that he had his civil rights restored, so he cannot assail his counsel as constitutionally deficient for failing to assert a defense when Mandell knew of and failed to disclose the facts that would alert his counsel to the viability of that defense.

As for Mandell's conviction for possession of a firearm in furtherance of a crime of violence, a prior felony conviction is not an element of the crime. *See* 18 U.S.C. § 924(c)(1)(A). Thus, even if Mandell had his civil rights restored, that would not preclude a conviction under § 924(c). Mandell's counsel correctly apprehended that a motion to dismiss that charge would have been baseless.

          *iii.*          *Failure to Move to Dismiss on Grounds of Vindictive Prosecution*

Mandell also contends that his counsel should have sought dismissal of all charges by arguing that they were brought in retaliation for Mandell's successful civil suit against the United States and the FBI. "The Constitution prohibits the government from undertaking a prosecution based solely on a vindictive motive." *United States v. Jarrett*, 447 F.3d 520, 524 (7th Cir. 2006). To succeed on a vindictive prosecution claim, "a defendant must affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication." *Id.* at 525 (internal quotation marks omitted).

While Mandell believes that the Government prosecuted him in this matter because of his previous civil action alleging FBI misconduct, he fails to demonstrate that any prosecutor or law enforcement agent in the present case had any involvement in the prosecutions underlying his civil lawsuit. Moreover, a vindictive prosecution claim is "extraordinarily difficult to prove." *United States v. Segal*, 495 F.3d 826, 833 (7th Cir. 2007). And here, given the video and audio recordings of Mandell devising his scheme to kidnap, torture, and murder Campbell, Mandell's trial counsel certainly was not deficient in deciding that he could not prove that, but for the Government's vindictive motive, Mandell would not have been prosecuted.

*iv.*    *Failure to Move to Exclude Expert Testimony*

During trial, the Government called an expert witness to explain the medical term "rigor mortis." Rigor mortis refers to the stiffening of the body's muscles after death. The Government called an expert to testify regarding this condition to provide further context for a recorded exchange in which Mandell told Engel that they would need to straighten out Campbell's corpse quickly after his death because Mandell did not want a "curled body." The expert's testimony was offered to demonstrate that the reason Mandell wanted Campbell's corpse straightened immediately upon death was because the task would be more difficult once rigor mortis set in.

Mandell claims that his trial counsel should have filed a motion in limine to exclude this testimony. However, his counsel did object to the expert testimony at trial and the Court nonetheless found the testimony relevant and overruled the objection. Mandell gives this Court no reason to believe that the testimony would have been excluded had it been presented by way of a motion in limine. *See Al-Awadi v. United States*, No. 1:18-cv-03327-TWP-MPB, 2020 WL 1956041, at *17 (S.D. Ind. Apr. 23, 2020) (concluding that the defendant's trial counsel was not ineffective for failing to file a motion in limine when counsel presented the arguments for

15

excluding the relevant evidence by way of objection at trial). Nor can the Court conclude that the trial's outcome would have changed had Mandell's counsel successfully excluded the expert testimony as to this relatively minor detail.

### D. Failure to Present Alternative Defense

Faced with overwhelming evidence that Mandell plotted to kidnap, torture, and kill Campbell, Mandell's trial counsel opted to argue to the jury that his client never intended to carry out the plot but was simply entertaining what he believed to be Michael's fantasies. Now, Mandell asserts that his counsel should have instead argued that Mandell had been framed or entrapped by the FBI in retaliation for his previous civil lawsuit.

The Court concludes that Mandell's counsel made an informed, strategic decision not to argue that Mandell's prosecution was a continuation of the misconduct set forth in Mandell's civil case. Indeed, the Government moved in limine to exclude evidence or argument regarding Mandell's civil lawsuit and the circumstances giving rise to it. Ultimately, the motion was denied as moot after Mandell's counsel informed the district court (in Mandell's presence) that he had discussed with Mandell the civil suit and how it fit with the criminal case, and determined not to rely on it in defense. (*United States v. Mandell*, No. 1:12-cr-00842-1 (N.D. Ill. Nov. 21, 2013), ECF No. 125; *see also Mandell*, 1:12-cr-00842-1 (Feb. 3, 2015), ECF No. 313.) Such a strategic choice, made after a thorough investigation of law and facts is virtually unchallengeable. *Strickland*, 466 U.S. at 690. Mandell also seems to suggest that his counsel should have pursued Mandell's planted gun theory, either independently or in connection with the prosecutorial retaliation defense. As discussed above, any defense predicated on the planted gun theory would have been fruitless and therefore counsel was not deficient in failing to assert it.

16

### E.     Failures to Impeach

Finally, Mandell faults his trial counsel for failing to cross-examine or impeach Agent Tipton and Michael on several critical aspects of Mandell's case. Among the areas that Mandell believes his counsel should have explored on cross examination of Agent Tipton are the planted gun theory and issues concerning Michael's credibility. For the reasons discussed above, further development of those issues would not have changed the trial's outcome. And, in any case, Mandell's counsel conducted an extensive cross examination of Michael on a number of issues and Mandell cannot show that his counsel's decision to focus on those issues was an unreasonable strategic decision.

### II.     Ineffective Assistance of Post-Trial Counsel

After trial, the district court granted Mandell's trial counsel's motion to withdraw and appointed new counsel to represent Mandell during post-trial proceedings. Yet Mandell contends that his post-trial counsel also performed deficiently. Mandell's complaints about his post-trial counsel largely mirror his complaints about his trial counsel. In particular, Mandell argues that his post-trial counsel failed to investigate the planted gun theory, failed to interview the same witnesses that his trial counsel failed to interview, and failed to pursue the alternative defenses that his trial counsel failed to pursue. Accordingly, Mandell's ineffective assistance claims concerning his post-trial counsel's handling of those issues fail for the same reasons that his claims concerning his trial counsel's performance failed. Mandell also faults his post-trial counsel for failing to review hundreds of letters that Mandell wrote to his trial counsel but does not explain how that failure prejudiced him. For that reason, he cannot maintain an ineffective assistance claim on that basis.

### III.     Ineffective Assistance of Appellate Counsel

Finally, Mandell argues that he received ineffective assistance of counsel during his direct appeal because his appellate counsel failed to raise Mandell's prior history with the FBI as grounds for suppression of the wiretap evidence. "The general *Strickland* standard governs claims of ineffective assistance of appellate counsel as well as trial counsel, but with a special gloss when the challenge is aimed at the selection of issues to present on appeal." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (citation omitted). Because "the hallmark of effective appellate advocacy" is counsel's ability to "winnow[] out weaker arguments" to focus on those most likely to prevail, "[a]ppellate counsel is not required to present every non-frivolous claim on behalf of [his] client." *Id.* (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1983)). Consequently, appellate counsel's performance will be deemed deficient only if he "fails to argue an issue that is both obvious and clearly stronger than the issues actually raised." *Id.* at 898 (internal quotation marks omitted). Of course, "the comparative strength of two claims is usually debatable," which makes it difficult for a petitioner to prove that the unraised claim is stronger than those claims actually raised by appellate counsel. *Id.* (internal quotation marks omitted).

Mandell seems to argue that, had appellate counsel raised the FBI's prior misconduct in its past investigations of Mandell, the Seventh Circuit would have further reason to doubt the Government's claimed need for the wiretaps. Moreover, that history would have bolstered Mandell's claim that Agent Tipton's affidavits contained material omissions. But, in affirming the district court's decision, the Seventh Circuit explained that Mandell "is familiar to us" and discussed "his unusual history," including his civil lawsuit against the Government. *Mandell II*, 833 F.3d at 818–19. Despite its familiarity with Mandell's history, the Seventh Circuit nonetheless agreed that the Government established its need for the wiretaps and that Mandell

was not entitled to a *Franks* hearing. *Id.* at 821–23. To the extent Mandell contends that his appellate counsel should have argued that Mandell's history with the FBI, by itself, warranted suppressing the wiretap evidence, such an argument is not obviously superior to those asserted on appeal. As already discussed, it is implausible that this history would have shown that the Government lacked probable cause for the wiretaps.

## IV.     Due Process Violations

Along with his ineffective assistance of counsel claims, Mandell alleges several errors committed by the district court that violated his right to due process. As an initial matter, two of Mandell's due process claims relate to issues that were already raised and rejected on direct appeal: the admission of wiretap evidence and the concealment of evidence concerning the planted gun theory. Those issues therefore may not be raised on collateral review. *Varela*, 481 F.3d at 935. Mandell also contends that his due process rights were violated by the Government's reliance upon Michael's false testimony and the admission of expert testimony regarding rigor mortis. But these claims simply repackage rejected ineffective assistance arguments as due process violations. Even assuming that this testimony was erroneously admitted, the Court has discussed above the reasons why Mandell was not prejudiced by either error.

Similarly, Mandell restates his arguments about the presiding judge's supposed lack of impartiality as violations of his right to a fair trial before a fair tribunal. *See Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) ("[T]he floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." (internal quotation marks and citation omitted)). The Court's conclusion that Mandell's accusations of bias were meritless for purposes of his ineffective assistance of counsel claim is equally applicable here.

Mandell's remaining due process claims concern the Government's supposedly improper cross examination of an FBI agent witness and pretrial misconduct by the Government that Mandell claims "poison[ed]" the mind of his trial counsel and the district court. Neither of those claims are based on new evidence and neither was raised on direct appeal. "A claim not raised on direct appeal generally may not be raised for the first time on collateral review and amounts to a procedural default." *White v. United States*, 8 F.4th 547, 554 (7th Cir. 2021). And Mandell cannot overcome this procedural default because he does not make the requisite showing of cause for the default since he had all the facts available to him to raise the claims on direct appeal and they are not based on a change in law following his appeal. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) ("[A] claim that is so novel that its legal basis is not reasonably available to counsel may constitute cause for a procedural default." (internal quotation marks omitted)); *Delatorre v. United States*, 847 F.3d 837, 843–44 (7th Cir. 2017) ("Nothing occurred after [the defendant's] trial or direct appeal that altered his potential claim. Thus, the proper time to raise that argument was at the district court before he was convicted and then again on direct appeal, not for the first time on collateral review."). Nor can he show that he suffered actual prejudice from the alleged error. *See White*, 8 F.4th at 554. And, for the reasons discussed above, Mandell has fallen far short of demonstrating his actual innocence. *See McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) ("Absent a showing of both cause and prejudice, procedural default will only be excused if the prisoner can demonstrate that he is 'actually innocent' of the crimes of which he was convicted.").

## V.    Cumulative Error

Mandell's final ground for § 2255 relief is cumulative error. The Supreme Court has held that trial errors that, when considered alone, were harmless may nonetheless violate the due

process guarantee of fundamental fairness when considered cumulatively. *Taylor v. Kentucky*, 436 U.S. 478, 487 n.15 (1978). To demonstrate cumulative error, a petitioner must establish "(1) at least two errors were committed in the course of the trial; (2) when considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied the petitioner a fundamentally fair trial." *United States v. Tucker*, 714 F.3d 1006, 1017 (7th Cir. 2013) (internal quotation marks omitted). Since the Court has identified no trial errors, Mandell's claim of cumulative error necessarily fails.

### VI.      Certificate of Appealability

Having found that Mandell is not entitled to § 2255 relief, the Court next considers whether it should issue a certificate of appealability. Under 28 U.S.C. § 2253(c)(1), a petitioner may not appeal a final order in a § 2255 proceeding without a certificate of appealability. A court may not issue a certificate of appealability unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Such a showing is made only where "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted). The Court finds that Mandell has failed to satisfy that standard and therefore declines to issue a certificate of appealability.

**CONCLUSION**

For the foregoing reasons, Mandell's petition to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 1) is denied and the Court declines to issue a certificate of appealability.

ENTERED:

Dated:  May 11, 2022

_____
Andrea R. Wood
United States District Judge